IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JULIA BONNEWITZ, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 6:21-cv-00491 |
| BAYLOR UNIVERSITY, | § § § | |
| Defendant. | § § § | |

**DEFENDANT BAYLOR UNIVERSITY'S MOTION TO
DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendant Baylor University ("Baylor") files this Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

I. INTRODUCTION

**Denied Tennis Tryout in 2017**

1. Plaintiff Julia Bonnewitz ("Bonnewitz") enrolled in Baylor University ("Baylor") in the Fall of 2017. At that time – the beginning of her freshman year- she sought a tryout for the Women's Tennis team. Bonnewitz was told "no" by Women's Tennis Coach Joey Scrivano, who strongly encouraged her to pursue "club" tennis instead. *Complt* ¶ 14.

2. Bonnewitz now files this lawsuit alleging that three years later - at the beginning of her Senior year in the Fall of 2020 - Baylor retaliated against her for her participation in a Summer 2020 Title IX intake process by not changing its 2017 decision to deny her a tryout.[1]

3. The sole basis of Bonnewitz's claim is that she was denied a "walk on" "tryout" for the Women's Tennis team in August 2020, allegedly as a result of her participation in the 2020

---

[1] Baylor vigorously denies Bonnewitz's allegations, but for purposes of this Motion to Dismiss, focuses solely on her deficient pleading.

1

Title IX intake process. *Complt,* ¶¶ *1, 4, 69, 71.* That allegation cannot support a Title IX retaliation claim since the tryout was *actually* denied her in 2017, three years before the Title IX intake. The Baylor Women's Tennis coach was not required to change the 2017 decision simply because Bonnewitz provided information as part of the intake process for Baylor's Office of Equity, Civil Rights, and Title IX ("Equity Office") pursuant to Baylor's Title IX policy in 2020. In fact, Bonnewitz admits that Baylor correctly explained in August 2020 "that the decision to deny her a tryout had already been made prior to that…. and that the decision was made and they were not making changes to the Women's Tennis team….". *Complt,* ¶¶ 59, 65.

### No Connection Between Tryout Denial and 2020 Investigation

4. Bonnewitz has not asserted sufficient factual allegations to state a plausible claim for Title IX retaliation. She has not and cannot plead sufficient facts to demonstrate that there was a causal connection between her engagement in a protected activity in 2020 and the claimed adverse action of refusing her a tryout in August 2020, since the coach denied her a tryout in 2017.

5. Nor is there (1) any regulation or case under Title IX that requires Baylor to *change* its previously made 2017 decision denying a tryout simply because she submitted information under the Title XI policy or (2) any pleading of any fact showing that the Women's Tennis coach would have changed his 2017 decision and allowed a tryout in 2020 "but-for" her submission of information to the Equity Office.

### Confirming Prior Decision Not Adverse Action

6. Bonnewitz has not asserted a claim for denial of any benefit that would constitute an adverse action. Bonnewitz merely claims that Baylor retaliated against her by not allowing her to tryout for a walk-on position on the Women's Tennis team at the beginning of her senior year.

2

She does not assert that she was somehow *entitled*[2] to tryout at any point, particularly given the fact she had sought that tryout years earlier and been turned down.

**No Pleading Concerning Decision Maker**

7.  Finally, it is not even alleged that the person who committed the alleged retaliatory act was involved in or aware of the Title IX submission to the Equity Office. At a bare minimum, Bonnewitz must plead that the person making the retaliatory decision in August 2020 to deny her a tryout was aware of her role in the Title IX intake and retaliated because of her involvement. She has not done so, and indeed could not, since the actual decision was admittedly made in *2017.*

8.  For each of the forgoing reasons, Bonnewitz's Title IX retaliation claim—and this lawsuit in its entirety—should be dismissed.

## II. STANDARD OF REVIEW

9.  A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a complaint must include sufficient factual allegations that, when assumed to be true, state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 570). The complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly,* 550 U.S. at 555 (internal citations omitted).

10. Although the court must view a claim "in the light most favorable to the plaintiff" and "accept well-pleaded facts as true, . . . legal conclusions are not entitled to the same assumption

---

[2] At Baylor, as one would expect, participation on university athletics teams is clearly and expressly a privilege and *not* a right.

of truth." *S.E.C. v. Jackson,* 908 F.Supp.2d 834, 847 (S.D. Texas 2012) (citing *Iqbal,* 129 S.Ct. at 1950). "The court should not 'strain to find inferences favorable to the plaintiffs' or 'accept conclusory allegations, unwarranted deductions, or legal conclusions.'" *Id.* (quoting *R2 Inv. LDC v. Phillips,* 401 F.3d 632, 642 (5th Cir. 2005)).

### IV. ALLEGED FACTS

11. While still in high school in 2016, Bonnewitz contacted Baylor Women's Tennis coach Joey Scrivano to introduce herself and to express an interest in playing tennis at Baylor. *Complt,* ¶ 12. Bonnewitz subsequently applied to Baylor, was admitted solely on her academic merits as a general student, and began classes during the 2017 Fall semester, three years before the alleged actions at issue in her lawsuit. *Complt,* ¶¶ 13, 14.

12. Bonnewitz acknowledges that *when she arrived at Baylor in August 2017*, she was told by Scrivano that she could *not* try out for the Women's Tennis team but that she should play club tennis instead. *Id.* at ¶ 14.

13. According to Bonnewitz, on April 18, 2020 (nearly three years later) she reached out to Brian Boland ("Boland"), the *Men's* Tennis coach, to ask for help joining the Women's Tennis team. *Id.* at ¶ 18. She does not allege any facts showing that Boland (1) had any right to decide who would be on the Women's Tennis team, (2) had any ability to influence any decision made by the Women's Tennis coach, or (3) offered her any "tryout" she unsuccessfully sought almost three years before.

14. Instead, she admits that Boland told Bonnewitz he "would need to think about" the "best approach." *Complt,* ¶ 19. Bonnewitz, continuing her effort to get a tryout for the Women's Tennis team for her senior year, sought to meet with Boland. There were apparently a series of back-and-forth text messages between them. She alleges that in this texting about a meeting she ultimately believed that "Boland was trying to engage her in an inappropriate relationship…" *Id.*

4

at ¶¶ 18-27.[3] She resisted, complained about the purported inappropriate texts, and expressed her disappointment. After several communications with Boland *and* his wife *and* after receiving an apology from Boland, Bonnewitz thought it was over - "the end of the matter." *Id.* at ¶¶ 28-41.

15. Notably, Scrivano, the Women's Tennis coach, was not involved in any of this, nor is there any allegation that he had any knowledge of Bonnewitz's and Boland's interactions.

16. Baylor's Equity Office contacted Bonnewitz on July 16, 2020 to discuss an complaint the Equity Office received involving inappropriate text messages from a Baylor staff member to a student.[4] *Id.* at ¶¶ 41-43. Bonnewitz cooperated in the initial discussion with the Equity Office, and Boland resigned shortly thereafter. *Id.* at ¶¶ 43, 45. Bonnewitz alleges that "media outlets reported that Baylor asked Boland to resign because of text messages he sent to a student."[5] *Id.* at ¶ 48.

17. On August 25, 2020, Bonnewitz and her father met with the Associate Vice President of Intercollegiate Athletics and the Senior Associate Athletics Director. *Id.*, at ¶ 56. Women's Tennis coach Scrivano was not present. Among other things, Bonnewitz and her father asked (again) if she could tryout for the Women's Tennis team - and were told *again* that decision had already been made and that she still could not tryout. She admits this was what she was told as a freshman - three years earlier in August 2017. *Id.* at ¶¶ 14, 56-57, 59.

18. There is no pleading to support a claim that the Women's Tennis coach – Scrivano – ever changed his "no" decision after August 2017 nor is there any claim that any other Athletic Department employees could override Scrivano's earlier decision. Instead, Bonnewitz and her

---

[3] Bonnewitz does not allege that she engaged in an inappropriate relationship with Boland, that they actually even met, or that *anything* happened between them other than the communications that she thought were inappropriate.
[4] Bonnewitz does not allege or assert that she initiated a complaint about Boland's comments or conduct. Instead, Baylor's Title IX office contacted her.
[5] Bonnewitz does not complain that Baylor leaked the story to the local media. Instead, she admits that "upon investigation it appeared the individual who reported Boland's misconduct (who allegedly was not Ms. Bonnewitz) leaked the story to the media." *Complt,* ¶ 50.

5

father simply chose another audience and another circumstance (submission of information to the Equity Office) to re-urge the continued desire to tryout for the Women's Tennis team. Interestingly, she does not claim she would have actually made the team *had* she tried out.

19. There was no requirement, nor is any pled, that Baylor (or Scrivano) had any duty change Scrivano's 2017 decision. The facts as Bonnewitz pleads them establish that Scrivano made the decision to deny her request to tryout for the Women's Tennis team long before the 2020 Title IX investigation, and thus it could not have been in retaliation for her participation in the Title IX process. Therefore, she cannot succeed on her retaliation claim because she has not alleged, and cannot demonstrate, that Baylor took an adverse action against her because of her participation in the 2020 Title IX process.

## V. ARGUMENT AND AUTHORITIES

### A. No Facts Alleged Supporting Claim Against Baylor.

20. "Title IX prohibits sex discrimination by recipients of federal education funding." *Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 173 (2005). Title IX further prohibits retaliation against individuals because they complain of Title IX discrimination. *See id.* at 183.

21. Retaliation under Title IX requires that the funding recipient or its representatives took an adverse action against a plaintiff because she participated in a protected activity. *Sewell v. Monroe City Sch. Bd.,* 974 F.3d 577, 586 (5th Cir. 2020) (citing *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.,* 647 F.3d 156, 170 (5th Cir. 2011)). "That typically means the funding recipient itself signed off on the adverse action." *Id.*

22. Bonnewitz has not identified any official policy that contributed to the alleged retaliation. If the allegations are not about a funding recipient's "official policy," the plaintiff must show "deliberate indifference" that allowed or created the alleged retaliatory conduct. *Sewell,* 974 F.3d at 586 (citing *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290 (1998)). "[T]he

Supreme Court rejected liability under Title IX based on agency principles of *respondeat superior* or constructive notice; rather, the recipient itself must have violated the statute, as when it (through an appropriate person) has had actual notice of and been deliberately indifferent to discrimination." *Doe v. The Univ. of N. Texas Bd. of Regents,* 2016 WL 1141144, at *2 (E.D. Tex. 2016) (citing *Gebser,* 524 U.S. 274)). She must show that that Baylor itself had actual notice of and deliberate indifference to the alleged retaliation against her. There is no such proof here.

23. Bonnewitz has not alleged, or even attempted to allege, that Baylor or its administrative managers were aware of the alleged retaliation or deliberately indifferent to the alleged retaliatory conduct. Therefore, her claims against Baylor should be dismissed. *See Sewell,* 974 F.3d at 587 (affirming dismissal of Title IX retaliation claims because no pleading of deliberate indifference to retaliatory conduct); *see also Doe,* 2016 WL 1141144, at *2.

**B.** **No Adverse Action in Retaliation for Participation in 2020 Investigation.**

24. Bonnewitz alleges that Baylor refused to allow her to tryout for the Women's Tennis team in retaliation for participating in a Title IX investigation. *Complt,* ¶¶ 4, 69, 71.

25. "The language of the anti-retaliation provision of Title IX and that of Title VII are similar and 'should be accorded a similar interpretation.'" *Collins v. Jackson Public School District,* 609 Fed. App'x. 792, 795 (5th Cir. 2015). Consequently, to establish a prima facie case of retaliation under Title IX, the plaintiff must show that (1) she engaged in a protected activity; (2) she suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *Id.* at 795 (citing *Willis v. Cleco Corp.,* 749 F.3d 214, 317 (5th Cir. 2014)).[6]

---

[6] Title VII retaliation claims similarly require that the plaintiff demonstrate that she participated in a protected activity, suffered an adverse employment action, and that there is a causal connection between the protected activity and the materially adverse action. *Taliaferro v. Lone Star Implementation & Elec. Corp.,* 693 Fed. App'x. 307, 309-310 (5th Cir. 2017).

7

26. Title VII and Title IX retaliation claims require that the plaintiff demonstrate that the desire to retaliate was the "but-for" cause of the adverse action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 352 (2013); *see Collins,* 609 Fed. App'x. at 795; *see also Alva v. Tex. A&M Int'l Univ.,* 2018 WL 5634983, at *7 (S.D. Tex. 2018). The applicable causation standard "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer" - here, the alleged wrongful actions of Baylor. *See Univ. of Tex.,* 570 U.S. at 360.

27. Her exclusion from trying out for the tennis team is *not* an adverse action that occurred *after* she engaged in a protected activity. It was simply a confirmation of the Women's Tennis coach's prior decision.

28. The adverse action Plaintiff complains of was actually a decision that had been made in 2017, before Bonnewitz's participation in the Summer 2020 investigation. Bonnewitz admits in her Complaint that in 2017 the Women's Tennis Coach told her that she could *not* try out for the tennis team. She was told she could play "club" tennis instead, *Complt,* ¶ 14. She admits that prior decision was not changed before, at, or after the August 25, 2020 meeting between her, her father, and two athletics department representatives. *Id.* at ¶¶ 18-20, 56-57, 59.

29. The claim of Bonnewitz's "belief" that there were two subsequent "walk-ons"[7] on the Women's Tennis team is not only flawed, but it is not due any weight since she pleads no basis

---

[7] This pleading is fatally flawed and is simply conclusory, since Bonnewitz shows no basis to have any knowledge concerning their claimed walk-on status or to negate the fact that they were, in fact *recruited* by the Women's Tennis coach – an entirely different circumstance. *See In re Superior Air Parts, Inc.,* 486 B.R. 728, 741 (Bankr. N.D. Tex. 2012) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth . . . and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard"); *see also Funk v. Stryker Corp.*, 673 F.Supp.2d 522, 525 (S.D. Tex. 2009) (the requirement from *Twombly* requiring sufficient factual pleadings applies to allegations based on information and belief). Nor are the Men's Tennis team, or Equestrian teams (*Complt,* ¶¶ *60, 64-65.*) particularly relevant here – she did not seek a spot on those teams, nor did she plead they were comparable rosters, structures, or the same decision-makers (nor could she have).

for that claimed "information and belief" knowledge. More importantly, it is *not* relevant since the decision as to Bonnewitz was made years earlier. There is no pleading that they are similarly situated or proper comparators.

30. Finally, the same coach that made that decision (and the 2017 decision about Bonnewitz) had the right to build the Women's Tennis team based on his discretionary judgement about talent, attitude, and fit. There is no pleading, nor could there be, that Baylor, or the Women's Tennis coach, had a duty to change the decision made three years earlier – simply because she participated in a Title IX process.

31. No student has such a right to an opportunity to participate in athletics: "a longstanding body of precedent" has established that participation in athletics is a privilege and *not* a right. *See Equity in Athletics, Inc. v. Dept of Education,* 639 F.3d 91,109 (4th Cir. 2011) (citation omitted).[8] Bonnewitz fails to allege any facts, nor could she, that show that she could have tried out for the tennis team "but-for" the submission of information to the Equity Office in the 2020 Title IX process. She even admits that opportunity was actually denied three years earlier.

32. Baylor's conduct both before and after her participation in the 2020 investigation was consistent; therefore, the post-participation conduct is not retaliatory. *Wright v. N.Y.C. Off-Track Betting Corp.*, 2008 WL 762196, at *5 (S.D. N.Y. 2008). "It is well-settled that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before a plaintiff engaged in protected activity." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F.Supp.3d 707, 722 (S.D. N. Y. 2020) (citing *Cavemittes v. City of N.Y. Dep't of Hous. Pres.*

---

[8] And this is confirmed by Baylor's Student Athlete Handbook (2019-2020) P. 6-7 (under sportsmanship), Available online at *https://baylorbears.com/documents/2019/7/30//Student_Athlete_Handbook_19_20.pdf?id=12755*. When deciding a Motion to Dismiss, the court can take judicial notice of matters publicly available. *See Lovelace v. Software Spectrum,* 78 F.3d 1015, 1017 (5th Cir. 1996); *Wolcott v. Sebelius,* 635 F.3d 757, 762-3 (5th Cir. 2011). It is requested to do so here, pursuant to Fed. R. Evd. 201(b).

9

*& Dev.*, 974 F. Supp. 2d 240, 262 (S.D. N.Y. 2013)). Here, the decision was not only set in motion, but Bonnewitz actually admits that the "no" decision was made and conveyed to her in 2017.

33. Courts have repeatedly stated that an employer does not have to suspend previously planned actions upon discovering that the plaintiff engaged in protected activity. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001); *Fanning v. Metro. Transit Auth. of Harris Cnty, Texas*, 141 Fed.Appx. 311, 314 (5th Cir. 2005); *Allen v. Harvey*, 2006 WL 8436261, at *7 (W.D. Tex. 2006); *Cephus v. Tex. Health and Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 832 (S.D. Tex. 2015). Consequently, Baylor's decision here not to change its prior decision after Bonnewitz engaged in protected activity is not *any* evidence of causation. *See Breeden*, 121 S.Ct. at 1511; *see also Cephus*, 146 F. Supp. 3d at 832. Instead, the facts as pled by Bonnewitz prove that she cannot—and has not—established any causal connection between the protected activity and the denial of a tryout – the alleged retaliation.

34. Therefore, she has not, and cannot, sufficiently plead that the 2020 refusal to change that decision would not have been made "but-for" her participation in the protected activity. As a result, her retaliation claim should be dismissed.

C. **No Material Adverse Action**

35. Bonnewitz must plead that she suffered a "material" adverse action because of her participation in the Title IX process. In this case, the *only* claim of adverse action is the continued denial of a chance to "tryout" for the tennis team. *Complt.* ¶¶ 4, 69, 71. *Collins v. Jackson Public School District,* 609 Fed. App'x. at 795. Her position presupposes (but she does not plead or establish) that Baylor affords *any* student a chance to tryout for any athletic team despite a prior denial of such a chance. She does not, and simply cannot, allege any facts to support such a position, nor does such a claim compart with common sense or reality.

36. "[N]ot everything that makes a plaintiff unhappy is an actionable adverse action." *Burwell v. Pekin Cmty. High Sch. Dist. 303*, 213 F.Supp.2d 917, 934 (C.D.Ill. 2002) (citing *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 466 (7th Cir. 2002). The Supreme Court has held that only retaliation that produces an injury or harm resulting from an action that is materially adverse is actionable. *Burlington N. & Santa Fe Ry. Co. v. White*, 584 U.S. 53, 68 (2006) (citing *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (C.A.D.C. 2006)). There is no such material adverse action here.

37. Coaches have discretion to select the athletes for their teams based on skill, attitude, overall assessment, and fit with the team[9]. As matter of fact, it is well recognized that coaches have "broad discretion" as to whom to play. *See Heike v. Guevera* 519 Fed. Appx. 911, 922 (6th Cir. 2013, *see also Engquist v. Oregon Dep of Agr.*, 553 U.S. 591, 603 (2008) (discretionary decision-making does not support liability because "treating like individuals differently is an acceptable consequence of the discretion granted").

38. An action is adverse for retaliation purposes if it would dissuade similarly situated individuals from engaging in the protected activity. *See Burlington,* 548 U.S. at 68-69. Bonnewitz must thus plead that a person in her position as a senior *previously* denied the opportunity to tryout would not participate in a Title IX process out of fear that - at that late stage of her college career - she would not be afforded an opportunity she had already been denied. There is no fact alleged to support such a position nor could there be.

39. A party should not be permitted to utilize participation in a Title IX process to manipulate the system and try to resurrect an opportunity previously denied. Baylor was not required to change its previous decision denying Ms. Bonnewtiz a tryout. There is no regulation

---

[9] This is especially true for National Collegiate Athletic Association Division 1 Football Bowl Subdivision intercollegiate varsity teams that recruit and compete at the highest and largest levels across the nation and, for tennis, globally.

or case that shows or holds that Baylor somehow had a duty to change the decision made three years earlier.

D. **No Pleading Concerning Ultimate Decision Maker**

40. Without pleading and evidence that the person who made the alleged adverse decision was aware of the alleged protected activity and made the claimed adverse decision in retaliation for the protected activity, there is no pleading of the required causal connection. *See Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999). In this case, it is admitted that Scrivano – as the Women's Tennis Coach- made the decision in August 2017 that Bonnewitz could not tryout. Bonnewitz does *not* allege that Scrivano was aware of the Title IX process, Bonnewitz's role in making a claimed protected communication as a part of the Title IX process, or that it had any impact with respect to Scrivano or the decision he *already* made. In light of the fact that Baylor (and Scrivano) had no duty to *change* the 2017 decision, there are insufficient facts pled to support the claim that the decision by Scrivano would have been changed "but for" the claimed retaliation.

CONCLUSION AND PRAYER

41. Plaintiff Julia Bonnewitz has failed to plausibly state a claim for Title IX retaliation. Therefore, Defendant Baylor University respectfully requests that the Court grant Defendant's Motion to Dismiss and dismiss Bonnewitz's Title IX retaliation claim with prejudice. It further requests any other or additional relief, in law or in equity, to which it may be entitled.

Respectfully submitted,

**BEARD KULTGEN BROPHY BOSTWICK & DICKSON, PLLC**

By: _____
Andy E. McSwain
Attorney-in-Charge
State Bar No. 13861100
Dan N. MacLemore
State Bar No. 24037013
Susan E. Cates
State Bar No. 24044932
220 South Fourth Street
Waco, Texas 76701
Telephone: (254) 776-5500
Facsimile: (254) 776-3591
mcswain@thetexasfirm.com
maclemore@thetexasfirm.com
cates@thetexasfirm.com

**ATTORNEYS FOR DEFENDANT BAYLOR UNIVERSITY**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23 day of July, 2021, Defendant Baylor University's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) was electronically filed with the Clerk of Court using the Court's ECF System, which will automatically send notification of such filing to all counsel of record, including counsel for Plaintiff:

Phillip N. Sanov
Morgan & Morgan, PA
16225 Park Ten Place, Suite 500
Houston, Texas 77074
psanov@forthepeople.com

Adria Lynn Silva
Morgan & Morgan, PA
8151 Peters Road, 4th Floor
Plantation, Florida 33324
asilva@forthepeople.com

Clay Martin Townsend
Morgan & Morgan, P.A.
20 N. Orange Ave., Suite 1600
Orlando, Florida 32806
ctownsend@forthepeople.com

_____
Andy E. McSwain